Bernard SNYDER, Plaintiff,

v.

SAN DIEGO FLOWERS; Village Square Liquor & Deli; Terrance R. Caster Trust; and Does 1 Through 10, Inclusive, Defendants.

No. CIV. 98–0781–B (AJB).

United States District Court, S.D. California.

Sept. 8, 1998.

Amy B. Vandeveld, San Diego, CA, for Bernard Snyder.

Donald Merkin, LaJolla, CA, for San Diego Flowers.

## ORDER STAYING PROCEEDINGS IN THIS CASE FOR 60 DAYS AND RETAINING SAN DIEGO FLOWERS' MOTION TO DISMISS UNDER SUBMISSION

BREWSTER, District Judge.

### I. INTRODUCTION

On April 24, 1998, Plaintiff filed a complaint alleging discrimination in access to public accommodations in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (ADA), in addition to several supplemental state law causes of action. Defendant San Diego Flowers (SDF) now moves to dismiss for want of subject matter jurisdiction and failure to state a claim under Fed.R.Civ.P. 12(b)(1) and (6), respectively. Upon due consideration of the moving and responding papers and for the reasons set forth below, the Court hereby DENIES SDF's motion to dismiss.

## II. BACKGROUND

The following factual allegations are set forth in the complaint. Bernard Snyder (Plaintiff) has a mobility impairment that requires him to use a wheelchair. On or about August 23, 1997, Plaintiff attempted to visit several adjacent public businesses: San Diego Flowers, Village Square Liquor & Deli, and Terrance R. Caster Trust (Defendants). Plaintiff alleges that he could not access any of these businesses because they have not complied with the accessibility requirements of the ADA and various California statutes. The complaint alleges causes of action for (1) violations of the ADA; (2) violations of Cal. Civ.Code §§ 51, 52 et seq., 54.1, 54.2, 54.3, 55, and 55.1; (3) violations of Cal. Health & Safety Code §§ 19955, et seq.; (4) negligence per se; and (5) negligence. Plaintiff seeks damages, injunctive and declaratory relief, attorney's fees, and costs.

## III. DISCUSSION

### A. Standards of Law

#### 1. Fed.R.Civ.P. 12(b)(1)

 Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R.Civ.P. 12(b)(1). The party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). A complaint will be dismissed for lack of subject matter jurisdiction (1) if the case does not "arise under" any federal law or the United States Constitution, (2) if there is no case or controversy within the meaning of that constitutional term, or (3) if the cause is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

 When the moving party merely asserts that the complaint fails on its face to demonstrate that subject matter jurisdiction exists, the factual allegations in the complaint are presumed to be true, and the motion is granted only if the plaintiff has failed to allege an element necessary for subject matter jurisdiction under a given statute. *See* 2A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice para. 12.07[2.1], at

12–46 to 12–47 (2d ed.1987); *see also Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 731 (11th Cir.1982); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981); *Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir.1977).

#### 2. Fed.R.Civ.P. 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. The Court must accept as true the complaint's material allegations and any reasonable inferences that may be drawn from them. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). However, the Court may disregard conclusory allegations that are wholly unsupported or contradicted by the plaintiff's factual allegations. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted). The Court will dismiss a claim if the complaint, when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action. However, at least on an initial 12(b)(6) review, plaintiff will be given leave to file an amended complaint so long as it is not beyond doubt that the plaintiff can prove no set of facts that would warrant legal relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. Must Plaintiff Exhaust Administrative Remedies Before Suing under the ADA?

SDF argues that this Court lacks subject matter jurisdiction over Plaintiff's ADA claims because a plaintiff must exhaust administrative remedies before filing suit under the ADA. Plaintiff counters that the ADA does not impose an administrative exhaustion requirement.

The ADA prohibits places of public accommodation from discriminating against disabled persons by, among other things, failing to remove architectural barriers to their businesses or, if removal is not readily achievable, using alternative methods for providing disabled persons with access to their goods, services, and facilities. *See* 42 U.S.C. § 12182(a), (b)(2)(A)(iv) and (v). The

ADA provides a private right of action for people who are subjected to discrimination in violation of the ADA:

> the remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subject to discrimination of the basis of disability in violation of this subchapter.

42 U.S.C. § 12188(a)(1). Section 2000a–3(a) is part of Title VII. It states,

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by ... this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved . . . .

Title VII actions brought under § 2000a–3(a) are limited by the following:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. § 2000a–3(c). The state of California has laws that prohibit discrimination against disabled people. *See* Cal. Civ.Code §§ 51, 52, 52.1, 54, 54.1, 54.2, 54.3, 55, 55.1. State and local authorities are authorized to grant or seek relief from discriminatory practices against disabled people. *See* Cal. Civ.Code § 55.1. Therefore, SDF argues that

Plaintiff must comply with § 2000a–3(c) in order to bring a civil enforcement action under the ADA.

There is no controlling law on this question. Some federal courts have held that ADA plaintiffs are required to comply with paragraph (c), while others have not.

### 1. Cases holding that ADA plaintiffs must comply with paragraph (c)

In *Howard v. Cherry Hills Cutters,* 935 F.Supp. 1148 (D.Colo.1996), the district court, without questioning whether the ADA incorporated paragraph (c), stated that the plaintiff was required to exhaust administrative remedies before bringing an action for injunctive relief for the defendant's violation of the ADA. *Id.* 935 F.Supp. at 1150. Similarly, in *Daigle v. Friendly Ice Cream Corp.,* 957 F.Supp. 8 (D.N.H.1997), the district court assumed without elaboration that the plaintiff was required to comply with paragraph (c) as a prerequisite to the court's subject matter jurisdiction over his ADA claim. *Id.* 957 F.Supp. at 9–10.

The only published case that sets forth an analysis behind the court's holding that paragraph (c) is incorporated is *Mayes v. Allison,* 983 F.Supp. 923 (D.Nev.1997). The *Mayes* court found that the language of 42 U.S.C. § 12182 was ambiguous as to whether the statute incorporated paragraph (c) along with paragraph (a). This finding was based on (1) the court's opinion that the plain language of the statute supported both interpretations, (2) the even split among the courts that had addressed the issue, and (3) the fact that Department of Justice regulations implementing the ADA incorporated paragraph (b) (which provides for attorney's fees), which was not expressly mentioned in the text of 42 U.S.C. § 12182. *Id.* 983 F.Supp. at 924–25. This perceived ambiguity led the court to examine the legislative history of 42 U.S.C. § 12182.[1] Upon doing so, the Nevada district court found that the legislative history was dispositive. Although

---

1. "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." *United States v. Lewis,* 67 F.3d 225, 228 (9th Cir.1995) (citing *Sullivan v.*

*Stroop,* 496 U.S. 478, 482, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990)). If statutory language is ambiguous, courts must then look to legislative history. *Id.* 67 F.3d at 229.

the Senate floor debate did not shed light on the issue, the Joint Explanatory Statement of the Committee of Conference "specifies that the remedies and procedures of Title II of the 1964 Civil Rights Act" were to be the remedies and procedures for enforcing the ADA. *Id.* 983 F.Supp. at 925 (citing H.R. Conf. Rep. No. 101–596, at 80 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 589). According to the *Mayes* court, "this implies that Congress intended for all of Title II of the 1964 Civil Rights Act (i.e. 42 U.S.C. § 2000a), and not just one subsection, to apply to such enforcement actions. There is nothing to the contrary in the legislative history." *Id.* Therefore, the *Mayes* court concluded that paragraph (c) applied to ADA actions.

### 2. Cases holding that ADA plaintiffs need not comply with paragraph (c)

By contrast, a number of courts have held that because

> Congress specifically referred to § 2000a–3(a) when outlining the available remedies under Title III [of the ADA], we believe that, had it wanted to make written notice to state authorities a requirement under this title, it would have explicitly done so. We thus conclude that Title III imposes no requirement of exhaustion of administrative remedies or right to sue letters upon plaintiffs wishing to bring an ADA claim for injunctive relief against a private entity.

*Bercovitch v. Baldwin School*, 964 F.Supp. 597, 605 (D.P.R.1997); *see also Doukas v. Metropolitan Life Ins. Co.*, 1997 WL 833134, *3 (D.N.H.1997) ("[r]eading Congress's designation of 2000a–3(a) to include the other paragraphs of section 2000a–3 would render the designation of paragraph (a) superfluous"); *Soignier v. American Bd. of Plastic Surgery*, 1996 WL 6553, *1 (N.D.Ill.1996) ("[b]y the express terms of [42 U.S.C.] § 12188, the only provision adopted for subchapter III of the ADA is § 2000a–3(a)").

Recently, one of the judges on this Court has denied a motion to dismiss in an ADA case on grounds identical to those asserted here, finding that the statutory language of 42 U.S.C. § 12188(a) was unambiguous:

> Congress obviously knew how to adopt provisions of Title VII because it expressly

adopted subsection (a). It seems unlikely that Congress would absentmindedly forget to adopt a provision that appears a mere two paragraphs below the subsection it adopted.

*Botosan v. Fitzhugh*, 13 F.Supp.2d 1047 (S.D.Cal.1998). Judge Rhodes further disagreed with the *Mayes* court's finding that the legislative history clearly indicated that Congress intended to incorporate the requirements of 42 U.S.C. § 2000a–3(c) when enacting 42 U.S.C. § 12188(a): "Although one could read [the Joint Explanatory Statement of the Committee of Conference, discussed in *Mayes*] as claiming that the ADA incorporates all the procedures of Title VII cases, the statement does not explicitly say that the ADA adopts all such procedures." *Botosan*, 13 F.Supp.2d 1047, 1050.

### 3. This Court's holding

■ The Court has considered the logic underlying both sets of rulings discussed above. Although reasonable judges could reach different results on this question, this Court holds that 42 U.S.C. § 12188(a) does incorporate the requirements of 42 U.S.C. § 2000a–3(c) for civil actions under the ADA. The language of § 12188(a) only specifically mentions § 2000a–3(a), but its failure to say whether ADA actions brought under § 2000a–3(a) are subjected to the same requirements as those imposed on other actions brought under the same statute creates a latent ambiguity. The legislative history indicates that Congress wished to enact legislation that would give people discriminated against on the basis of disability the same means of redress possessed by people discriminated against on the basis of distinctions that the law already prohibited. Therefore, it is logical to conclude that ADA actions are subject to the same prerequisites as Title VII actions.

Furthermore, the Court notes that its holding in this case is fully consistent with the primary goal of the ADA: to ensure that public facilities provide equal access to all people irrespective of disability. Requiring potential plaintiffs to notify offenders and provide an opportunity to remediate before filing suit is likely to solve access problems more efficiently than allowing all violators to

be dragged into litigation regardless of their willingness to comply voluntarily with the ADA once informed of its infractions. The goals of the ADA do not include creating an incentive for attorneys to seek statutory fees by laying traps for those who are ignorant of the law. The Court believes that the purposes of the ADA are best served by reserving private enforcement actions for knowing violators who refuse to comply without an injunction.

The Court wishes to allow Plaintiff an opportunity to present his claims properly. Therefore, the Court will not rule on SDF's motion to dismiss at this time. Rather, it will exercise its discretion under § 2000a–3(c) and stay this matter for 60 days to allow Plaintiff to comply with the requirements of that subsection.

## IV. CONCLUSION

The Court concludes that 42 U.S.C. § 12188 incorporates the administrative exhaustion requirement contained in 42 U.S.C. § 2000a–3(c). Accordingly, the Court will stay this action as to all Defendants for 60 days from the date of this order to allow Plaintiff to report the alleged ADA violations to the appropriate state authorities listed in Cal. Civ.Code § 55.1 and to allow the requisite 30 days to pass. If Plaintiff fails without good cause to timely file proof that he has complied with § 2000a–3(c), the Court will rule on SDF's motion to dismiss and will dismiss this case without prejudice. If Plaintiff does demonstrate exhaustion of administrative remedies within the time provided, the Court will deny SDF's motion to dismiss as moot.

IT IS SO ORDERED.