**Vincent GUZMAN, Jr., Plaintiff,**

v.

**DENNY'S INC., et al., Defendants.**

**No. C–3–97–345.**

United States District Court,
S.D. Ohio,
Western Division.

Feb. 4, 1999.

Nicholas L. Gerren, Jr., Dayton, OH, Patricia LT Camp, Dayton, OH, for Vincent Guzman, Jr, plaintiff.

Teresa D. Jones, Thompson, Hine & Flory, Dayton, OH, for Denny's, Inc, defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on Defendant Denny Inc.'s[1] Motion for Summary Judgment (doc. # 24), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Vincent Guzman, a paraplegic who uses a wheelchair to ambulate, filed this suit against the Denny's alleging a violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq., and common law negligence.[2] Subsequently, Defendant filed this Motion for Summary Judgment. Upon consideration of the facts and the

---

1. Plaintiff's Complaint also includes John Doe, identified only as an unnamed employee of Denny's, as a defendant. Neither party has identified the John Doe on the record nor did Plaintiff serve the Complaint on the John Doe.

2. Plaintiff's Complaint seeks both monetary damages and injunctive relief. Plaintiff's

prayer for monetary damages must arise under the negligence claim. Title III of the ADA provides only for injunctive relief. 42 U.S.C. § 12188; *see also Smith v. Wal–Mart Stores, Inc.,* 167 F.3d 286, 292 (6th Cir.1999); *Mayberry v. Von Valtier,* 843 F.Supp. 1160, 1167 (E.D.Mich.1994).

law, Defendant's Motion for Summary Judgment is hereby **DENIED**.

## I. BACKGROUND

Plaintiff alleges that he was unable to use the restroom facilities at Defendant's restaurant located at 7990 Springboro Pike, Miamisburg, Ohio because his wheelchair did not fit into the restroom. Plaintiff states in his Complaint that he contacted the restaurant managers several times regarding the wheelchair inaccessibility of the restrooms. Plaintiff further alleges that during a conversation with restaurant management in August 1995 regarding the restroom inaccessibility, another person verbally assaulted him and he felt physically threatened. Plaintiff alleges that this unidentified person was a Denny's employee.

Plaintiff filed this Complaint on July 31, 1997. In Count I, he alleges that Defendant has violated the ADA and denied him the benefits of its services, facilities, and accommodations by refusing to remove architectural barriers that block his wheelchair access to the restrooms facilities at the Miamisburg restaurant. In Count II, Plaintiff alleges that Defendant was negligent in failing to prevent confrontations that placed him in the position of being assaulted.

On October 1, 1998 Defendant moved for summary judgment on both counts. As to the ADA claim, Defendant first argues that Plaintiff failed to exhaust his administrative remedies before filing suit in federal court. Second, Defendant argues that the restaurant had no legal duty under the ADA to remove the architectural barriers to the restroom because it was not "readily achievable" to do so. As to the negligence claim, Defendant argues in the Motion for Summary Judgment that the claim is barred by the one year statute of limitations for assault and battery. After Plaintiff filed his Response to Defendant's Motion for Summary Judgment (doc. # 28), Defendant raised an additional argument in his Reply (doc. # 29). For the first time, Defendant argued that Plaintiff had not met his burden of establishing a prima facie case of negligence.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)) (emphasis omitted). For those issues where the moving party will *not* have the burden of proof at trial, the movant must "point[ ]out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evi-

dence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the defendant moves for summary judgment based on the lack of proof of a material fact, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to overcome the summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. ANALYSIS

### A. The ADA Claim

Title III of the ADA prohibits places of public accommodation from discriminating against individuals on the basis of their disability. *See* 42 U.S.C. § 12182(a). The statute defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such procedures are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," 42 U.S.C. § 12182(b)(2)(A)(ii), and "a failure to remove architectural barriers ... in existing facilities," 42 U.S.C. § 12182(b)(2)(A)(iv). If removal of an architectural or structural barrier is not readily achievable, it is discrimination to fail to "make such goods, services, facilities, privileges, advantages, accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

### 1. Administrative Exhaustion

Defendant's first basis for summary judgment on the ADA claim is that Plaintiff failed to exhaust his administrative remedies before filing this action. Plaintiff argues that Title III of the ADA does not require administrative exhaustion.

The dispute arises from differing interpretations of the enforcement provision of the ADA.

The ADA explicitly adopts enforcement provisions of Title VII of the Civil Rights Act of 1964: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter...." 42 U.S.C. § 12188. Section 2000a–3(a) of Title 42 allows an aggrieved person to seek injunctive relief. Section 2000a–3(a) is limited, however, by § 2000a–3(c). Section 2000a–3(c) requires an aggrieved party to first seek relief from the appropriate state or local body before filing a federal law suit, if state or local law prohibits the same alleged discriminatory act or practice prohibited by federal law.

Defendant correctly points out that the Ohio Civil Rights Act prohibits the same discriminatory conduct as Title III of the ADA. The Ohio Act prohibits "any proprietor, or any employee, keeper, or manager of a place of public accommodation to deny any person [on the basis of] ... handicap ... the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." Ohio Revised Code Section 4112.02(G). Defendant argues, therefore, that 42 U.S.C. § 2000a–3(c) requires the Plaintiff to have first sought relief from the Ohio Civil Rights Commission before filing this suit. Plaintiff disputes Defendant's interpretation. Plaintiff argues that the ADA enforcement provision explicitly adopts § 2000a–3(a) only and that the administrative exhaustion provision of § 2000a–3(c) is inapplicable.

The Sixth Circuit has not addressed this issue, and the few district courts that have are split. On one side are the courts that have determined that the Title III of the ADA could have adopted the entirety of § 2000a–3, but chose to explicitly adopt § 2000a–3(a) only. These courts have concluded that the exhaustion requirement of

§ 2000a–3(c) is not a part of Title III of the ADA. *See Botosan v. Fitzhugh,* 13 F.Supp.2d 1047 (S.D.Cal.1998); *Doukas v. Metropolitan Life Ins. Co.,* No. CIV. 4–478–SD, 1997 WL 833134 (D.N.H. Oct.21, 1997); *Bercovitch v. Baldwin Sch.,* 964 F.Supp. 597 (D.Puerto Rico 1997) *rev'd on other grounds* 133 F.3d 141 (1st Cir.1998); *Soignier v. American Bd. of Plastic Surgery,* No. 95 C 2736, 1996 WL 6553 (N.D.Ill. Jan.8, 1996). The *Botosan* court based its conclusion not only on the statutory text, but also on the legislative history. The court states that the congressional "Joint Explanatory Statement of the Committee of Conference" is ambiguous, but cites to a floor statement of Senator Harkin that the ADA only imposes the exhaustion requirement in employment contexts. *See* 1998 WL 458195, at *2.

Other courts have concluded that Title III of the ADA does require administrative exhaustion. Two courts have applied § 2000a–3(c) to Title III without explanation. *See Daigle v. Friendly Ice Cream Corp.,* 957 F.Supp. 8, 9 (D.N.H.1997); *Howard v. Cherry Hills Cutters, Inc.,* 935 F.Supp. 1148, 1150 (D.Colo.1996). Others have concluded that the statutory text is ambiguous and have based their conclusion that exhaustion was required on the legislative history. "The legislative history indicates that Congress wished ... [to give] people discriminated against on the basis of disability the same means of redress possessed by people discriminated against on the basis of distinctions that the law already prohibited..." *Snyder v. San Diego Flowers,* 21 F.Supp.2d 1207, 1210 (S.D.Cal. 1998); *see also Mayes v. Allison,* 983 F.Supp. 923, 925 (D.Nev.1997) (citing the Joint Explanatory Statement of the Committee of Conference in support). The *Mayes* court also cited the Department of Justice interpretation that the ADA incorporates the attorney's fees statutory section, § 2000a–3(b), even though it is not expressly mentioned in the ADA enforcement provision. *See* 983 F.Supp. at 925. The Department of Justice interpretation implied that the ADA intended to incorporate provisions other than § 2000a–3(a).

*See id.* Interestingly, the *Snyder* and *Mayes* courts both granted stays to allow the plaintiff to comply with the exhaustion requirements without dismissing the federal actions. *See* 21 F.Supp.2d at 1211; 983 F.Supp. at 926.

This Court follows traditional canons of statutory construction in reaching its conclusion that the ADA does not incorporate the administrative exhaustion requirements of § 2000a–3(c). All questions of statutory construction must start with the plain language of the text itself. *See Vergos v. Gregg's Enterprises, Inc.,* 159 F.3d 989, 990 (6th Cir.1998). If the language of the text is clear, courts need look no further. If, however, the language is ambiguous or if the plain meaning would result in an absurdity, an inconsistency, or a result at odds with the intent of Congress, then a court can look beyond the language of the statute. *See id.* The Court concludes that the text of 42 U.S.C. § 12188 is unambiguous. The text specifically incorporates only § 2000a–3(a): "[t]he remedies and procedures set forth in section § 2000(a)–3(a) of this title...." 42 U.S.C. § 12188(a)(1). To hold that the entirety of § 2000a–3 is adopted is to impermissibly render superfluous the explicit textual reference to § 2000(a)–3(a). *See United States v. Sanders,* 162 F.3d 396, 400 n. 7 (6th Cir.1998). Moreover, this interpretation is consistent with the well-established rule of statutory construction—expressio unius est exclusio alterius—that if a statute mentions specific subjects those not mentioned are presumed to be excluded. *See Doukas,* 1997 WL 833134, at *3.

Therefore, the Court concludes that Plaintiff was not required to exhaust his administrative remedies by filing a complaint with the Ohio Civil Rights Commission before instituting this action.

## 2. Readily Achievable Modifications

Defendant's second ground for summary judgment on the ADA claim is that it is not required to remove any architectural

barriers that might make the restaurant restrooms wheelchair inaccessible because to do so is not "readily achievable." Plaintiff argues that genuine issues of material fact preclude summary judgment on this ground. Title III defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense." The statute also provides the following four factors to consider in determining if proposed actions are readily achievable:

(A) the nature and cost of the action needed ...;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the covered entity with respect to the number of employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9). The regulations implementing Title III of the ADA also specify that the rearrangement of temporary or movable structures is not readily achievable "to the extent that it results in a significant loss of selling or serving space."

28 C.F.R. § 36.304(f). Finally, the Department of Justice recommends that determinations of whether an action is readily achievable should be done on a case by case basis. See Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544 (1991).

In support of its argument that modification of the restroom is not readily achievable, Defendant attached to his Motion for Summary Judgment (1) the affidavit of Jack Hastings, (2) two letters from Thomas Wurst to Patricia Camp, and (3) several pages of deposition testimony by Thomas Wurst.[3] Wurst, an architect hired to determine the feasibility of bringing the restaurant into ADA compliance, concluded that the modifications would reduce storage space by one-fourth to one-third, require removal of some seating space, and require the removal of the existing public telephones. He estimated that the renovations would cost approximately $21,500.00. Hastings averred that the restaurant has limited storage space and that the proposed elimination of storage space would present "serious operational difficulties." He further averred, that the proposed modifications would result in "a significant loss of serving space and, thus, lost profits." Hastings concluded that the ADA modifications would be "very difficult for the Restaurant to absorb, given its limited financial resources."

Plaintiff has met his burden of coming forth with evidence to the contrary. Plaintiff directs the Court to consider all of the factors the ADA provides for determining

**3.** The Court is not required to consider as evidence the deposition pages and letters of Wurst. In ruling on a motion for summary judgment, a court may consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.Pro. 56(c). Other exhibits may be admitted into evidence and considered if the exhibits are properly authenticated and attached to an affidavit. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 at p. 58–59 (1983). The deposition of Wurst has not been filed with the Court, nor has Defendant attached the excerpted pages to an affidavit for purposes of his motion. Moreover, the letters by Wurst are neither properly authenticated nor attached to an affidavit. Plaintiff, however, has not raised objections to this improperly attached evidence, but rather has made reference to it in its pleading opposing summary judgment. Because Plaintiff has implicitly consented to admissibility of this evidence, the Court will consider it. *See id.* at 60 ("[U]ncertified or otherwise inadmissible documents may be considered by the court if not challenged.").

if an architectural barrier is readily achievable. Plaintiff argues that Defendant failed to consider the financial resources of the parent entity when it concluded that the proposed renovations would not be readily achievable. The Department of Justice has recommended that if "the public accommodation is a facility that is owned or operated by a parent entity that conducts operations at many different sites, the public accommodations must consider the resources of both the local facility and the parent entity to determine if removal of the particular barrier is 'readily achievable.'" *The Americans with Disabilities Act: Title III Technical Assistance Manual,* § III–4.4200 at p. 30 (1992).

■ Plaintiff presents credible evidence that from which a reasonable jury could conclude that Denny's and its parent corporation, Flagstar Corporation, have sufficient financial resources to make the accessibility modifications. According to the Form 10–K filed with the Securities Exchange Commission by Flagstar Companies, Inc. for the fiscal year ending December 31, 1995 Denny's is the "largest full-service family restaurant chain in the United States in terms of both the number of units and total revenues." Moreover, the Form 10–K states that Flagstar operates three other restaurant chains and is one of the largest restaurant companies in the United States. This evidence raises a genuine issue of material fact regarding the financial ability of Defendant to renovate the restroom facilities.

Defendant is correct in asserting that Plaintiff has not come forward with evidence specifically refuting the amount of storage and seating space that would be lost if the restroom facilities are expanded. The regulation states that modifications are not readily available to the extent they "result[ ] in a significant loss of selling or serving space." 28 C.F.R. § 36.304(f).[4] In

this instance, Plaintiff need not dispute the specific amount of selling and serving space that would be lost in the restroom modifications. The parties seem to agree on what physical modifications would be required to make the restrooms wheelchair accessible. The remaining question is how Defendant could best put to use the remaining selling, serving, and storage space. On the basis of the evidence before it, the Court cannot conclude as a matter of law that the modifications would result in a significant loss of selling or serving space.

Therefore, because Plaintiff has raised a genuine issue of material fact regarding whether the restroom facility expansion would be "readily achievable," summary judgment is not appropriate.

## B. The Negligence Claim

In its Motion for Summary Judgment and its subsequent Reply brief, Defendant argues that Plaintiff's negligence claim is barred by a one year statute of limitations. Defendant argues that Count II of Plaintiff's Complaint, even though it is entitled "Negligence," is actually a claim alleging assault by the unidentified person presumed to be an employee of Denny's. Assault has a one year statute of limitations in Ohio, *see* Ohio Rev.Code § 2305.111, and Plaintiff filed this action almost two years after the incident occurred.

■ Plaintiff argues, and the Court agrees, that its underlying claim in Count II is negligent supervision and the two year limitation period of Ohio Revised Code § 2305.10 applies. To determine which limitations period applies to a plaintiff's claims, a court "must look to the actual nature or subject matter of the case, rather the form in which the action is pleaded." *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465 N.E.2d

---

4. Plaintiff argues that 28 C.F.R. § 36.304(f), which specifically applies to the "rearrangement of temporary or movable structures," is not applicable to situations like the one at bar where permanent walls would be removed.

Plaintiff's argument is misguided. If the regulation does not require moving even temporary or movable structures, common sense implies that the regulations do not require modification of permanent structures.

1298 (1984). Count II alleges that Denny's failed "to use reasonable and/or ordinary care, [sic] to prevent confrontations that would and did place Plaintiff in the position of being assaulted." Complaint ¶ 32. The Court is satisfied that Plaintiff's cause of action is against Denny's for negligent supervision, not against the unidentified person who allegedly assaulted him. Therefore, the two year statute of limitations applies and the negligence claim is not time-barred.

The Court's conclusion is supported by Ohio case law. In *Doe v. First United Methodist Church,* 68 Ohio St.3d 531, 629 N.E.2d 402, 407 (1994), the court applied the two year statute of limitations to a plaintiff's claim against a church and school district for their negligent failure to protect him from sexual assault by his teacher. Another court applied the two year statute of limitations in an analogous situation. In *Primmer v. Vrable,* No. 95 AEPE07–936, 1996 WL 125552, at *3 (Franklin Cty.App. March 19, 1996), a pharmacist was accused of corrupting plaintiff with drugs in order to compel her to respond to his sexual advances. The court applied the two year limitations period to a plaintiff's claim against the pharmacist's employers for their negligent supervision of the pharmacist. *See id.* The negligence claim against Defendant is similar to these cases. Plaintiff seeks to hold Defendant accountable not for the assault itself, but for its breach of a separate and independent legal duty imposed by law to supervise its employees. *See id.*

After being presented with Plaintiff's strong argument supporting the two year statute of limitations for its negligence claim, Defendant in its Reply brief for the first time argued that Plaintiff had not presented evidence sufficient to support a prima facie case of negligence. Defendant does imply in its Motion for Summary Judgment that Plaintiff has not even es-

tablished that the unidentified person was an employee of Denny's. The Court is satisfied, however, that Plaintiff has raised a genuine issue of material fact on the issue by describing why he believed the unidentified person was a Denny's employee in his deposition testimony.[5]

The Court will not consider Defendant's argument, raised in its Reply brief, that Plaintiff has not met its remaining prima facie burden on the negligence claim. Fundamental fairness requires that a plaintiff have an opportunity to rebut all arguments raised by a defendant moving for summary judgment. *Cf.* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2719 at p. 15 (1983) ("However, the court may not enter judgment on a ground not mentioned in the motion if the parties have had an adequate opportunity to argue and present evidence on the point. . . .") (emphasis added). Plaintiff's burden to come forward with specific facts establishing that there are genuine issues for trial can only be triggered by Defendant's arguments. *See* Fed.R.Civ.Pro. 56(e). Defendant did not state or imply this argument in its Motion and therefore Plaintiff had no reason to present prima facie evidence of negligence in its Response to Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that summary judgment is not appropriate. Plaintiff was not required to exhaust administrative remedies before filing the federal ADA claim and he has come forward with sufficient evidence to raise genuine issues of material fact on the ADA claim. The claim for negligence arising out of the alleged assault was filed within the two year statute of limitations and it will also go forward.

---

5. Excerpts from Guzman's deposition are attached to Defendant's Motion for Summary Judgment, and although improperly intro-  duced, will be considered for the reasons discussed in footnote 3, *supra.*

Therefore, the Defendant's Motion for Summary Judgment (doc. # 24) is hereby **DENIED.**

**IT IS SO ORDERED.**